144 So. 828

## ABRAMS v. ABRAMS et al.

### 5 Div. 115.

Supreme Court of Alabama.

Dec. 8, 1932.

J. B. Atkinson and Lawrence F. Gerald, both of Clanton, for appellant.

Reynolds & Reynolds, of Clanton, for appellees.

KNIGHT, J.

Bill by Julia A. Abrams against M. M. Abrams and others to declare two certain conveyances executed by J. M. Abrams null and void, upon the ground of undue influence and for partition. We say upon the ground of undue influence, for, while the bill charges that the deeds were executed "at a time when the grantor had become greatly weakened, mentally and physically, and did not know or understand the nature or consequences of the act he was about to perform," yet the only ground here seriously argued, and relied upon, is that of undue influence. Of course, the weakened condition of the grantor's mind is a pertinent fact to be considered along and in connection with the allegation and proof of undue influence. Naturally a mind in a weakened condition, whether from physical infirmities or from other cause, would be more susceptible to undue influence than if there were no such impairment.

The charge that the deeds were executed at a time when the grantor had become greatly weakened, mentally and physically, and did not know or understand the nature or consequences of the act he was about to perform, presented an issue as to the soundness of mind of the grantor. This charge may now, and here, as an independent ground for relief, be dismissed from further consideration, as the evidence does not support it.

The respondents M. M. Abrams, Guy W. Abrams and Effie Abrams demurred to the bill, assigning thirty different grounds of demurrer. The demurrer was to "the bill of complaint in this cause, and to each paragraph thereof separately and severally." This, of course, was a demurrer to the bill as a whole, and not to any particular aspects of the same. National Union Fire Ins. Co. v. Lassetter, 224 Ala. 649, 141 So. 645. The bill contained equity, and, under our uniform rulings, the demurrer should have been overruled, even if defective in some one of its aspects. Oden v. King et al., 216 Ala. 504, 113 So. 609, 54 A. L. R. 1413; Kelly v. Carmichael, 217 Ala. 534, 117 So. 67; Wood v. Estes, 224 Ala. 140, 139 So. 331; National Union Fire Ins. Co. v. Lassetter, 224 Ala. 649, 141 So. 645. The court by its decree sustained the demurrer to paragraph 10 and the relief prayed for thereunder, and overruled the demurrer to the remaining portion of the bill. The effect of the court's ruling was to strike section 10 from the bill, thus leaving the bill before the court in all other respects. No amendment was filed, and the cause was heard on the bill as it then stood. This was

permissible. Pollak v. Stouts Mountain C. & C. Co. et al., 184 Ala. 331, 63 So. 531; Sandlin v. Anders, 210 Ala. 398, 98 So. 299.

The decree of the court in sustaining respondents' demurrer to paragraph 10 of the complaint is here assigned for error. However, for the reasons hereinafter alluded to, the error in sustaining the demurrer to paragraph 10 involved no injury to the complainant.

The court, on final submission on the pleadings and proof, dismissed complainant's bill, thereby sustaining the validity of the two deeds, which were assailed by the bill, as having been procured by undue influence, and from this decree the present appeal is prosecuted by the complainant.

The record shows that the said J. M. Abrams, late a citizen of Chilton county, died intestate in that county during the month of February, 1928, that he was then about the age of seventy-six years, and that he left surviving him as his only heirs at law and next of kin the complainant, Julia A. Abrams, M. M. Abrams, Charlie W. Abrams, and Mary A. Moseley (if living, but if not her children), who were brothers and sisters of the deceased.

The evidence shows that, for several months prior to his death, the said J. M. Abrams was a sick man, and at times suffered considerable pain. This illness dated from about November 1, 1928. At the time of the execution of the deeds in question—one to M. M. Abrams, and the other to Guy W. Abrams and his wife, Effie Abrams—the said J. M. Abrams owned one hundred ninety-two and one-half acres of land, but according to the testimony this land was of small value, and was all the land owned by him.

J. M. Abrams, for a long while prior to his death, lived alone; his wife having died some years before. During his illness, and possibly for some time prior thereto, his brother, M. M. Abrams, and the said Guy W. Abrams, who was a nephew, were the only ones of his relatives who took any interest in the said J. M. Abrams, or ministered in the least to his comfort. The complainant visited him only once or twice during his last illness, though she resided all the while within two or three miles of the deceased.

■ We will first address our attention to the conveyance made by the said J. M. Abrams to Guy W. and Effie Abrams, husband and wife. The recited consideration of this conveyance is "one hundred dollars to the undersigned J. M. Abrams in hand paid by Guy W. Abrams and wife Effie Abrams; the receipt whereof is acknowledged." And the deed contains this further recital of consideration, "It is understood and agreed that the said Guy W. Abrams and Effie Abrams are to care for and support the said J. M. Abrams as long as he lives." The agreement to support the grantor "as long as he lives" was a valuable consideration, and it abundantly appears from the evidence in the cause that the respondents Guy W. and Effie Abrams lived up to the letter of their agreement to care for and support the said grantor as long as he lived. He died at their home, and the evidence shows conclusively to our minds that these respondents Guy W. and Effie Abrams, along with the respondent M. M. Abrams, were the only ones of his blood relations who concerned themselves in the least about the welfare and comfort of the said J. M. Abrams.

■■ The evidence fails to show the slightest undue influence exerted by either the said Guy W. Abrams, or by his wife, to induce their uncle to execute the deed to them. So far as the evidence shows to the contrary, it was J. M. Abrams who offered to make the conveyance, and the evidence wholly fails to show that he was moved to make the conveyance by any word or act on the part of the respondents Guy W. and Effie Abrams, or of either of them. The relation between the said Guy W. Abrams and J. M. Abrams was that of uncle and nephew, and there is nothing in this relationship of itself to create a confidential relation. 12 Corpus Juris, 421; 18 Corpus Juris, 240; Noel v. Noel et al. (Ala. Sup.) 143 So. 469. Nor does the evidence show that either of the grantees in this deed had exercised dominance over the will of the grantor; nor does it appear that any fraud, artifice, or imposition was practiced upon, or any overreaching and unconscionable advantage taken of, the grantor by the said grantees to bring about the execution of the deed. We therefore conclude that the chancellor correctly decreed against the contention of the complainant as to the conveyance executed by the said J. M. Abrams to the said Guy W. and Effie Abrams.

It is also insisted that the court erred in not decreeing that the conveyance executed to the said M. M. Abrams by the said J. M. Abrams was void, for and on account of undue influence exerted by the said M. M. Abrams upon the said J. M. Abrams, who was his brother.

■ The mere relationship existing between brothers does not of itself create a confidential relation. Noel v. Noel et al., supra. However, as is said in Kyle v. Perdue, 95 Ala. 579, 10 So. 103, 104: "It is not essential that any formal or technical relationship of a fiduciary character has been established between the parties. It suffices that they stand in such a relation to each other that, while it continues, confidence is justifiably reposed by one, and the influence which naturally grows out of that confidence is possessed by the other. When the parties are merely friends of each other, and deal upon terms of equali-

ty, the burden of showing the invalidity of any transaction between them is upon the one who assails it. But where their situation is such that, as a matter of law, confidence is reposed on one side, and there is superiority on the other side, resulting from the influence acquired by the acceptance of the confidence bestowed, there is a presumption of undue influence to be rebutted by the superior party. Transactions between such persons may be entirely valid, but the one who is in a position to influence the other must show that the duty which he assumed by the acceptance of the confidence has been fully performed. Voltz v. Voltz, 75 Ala. 555; Shipman v. Furniss, 69 Ala. 555 [44 Am. Rep. 528]; Waddell v. Lanier, 62 Ala. 347; Ferguson v. Lowery, 54 Ala. 510 [25 Am. Rep. 718]; Cowee v. Cornell, 75 N. Y. 99 [31 Am. Rep. 428]; Billage v. Southee, 9 Hare, 534; * * * 2 Pom. Eq. Jur. §§ 956, 963; 8 Amer. & Eng. Enc. Law, 647–654."

 M. M. Abrams, the grantee, and J. M. Abrams, the grantor, were brothers, each upward of seventy years of age. Whether known to him or not, the said J. M. Abrams was fast approaching his end. He had another brother, who lived some few miles from him, and he also had a sister, the complainant, living within three miles of his residence. His condition was fully known to them; yet, so far as the evidence shows, they did nothing to render comfort or aid to him, when he was most in need. Not so with the brother M. M. Abrams. This brother seems to have been attentive to, and thoughtful of, his brother, rendering at times much-needed aid. The record fails to show, to our mind, the slightest evidence of any undue influence exerted, or attempted to be exerted, by the said M. M. Abrams over his said brothers to influence him to execute the deed. The bill charges undue influence, and it is only undue influence that will avoid the deed. As is well said by this court in the case of Harris v. Bowles, 208 Ala. 545, 94 So. 757, 763: "It is not influence, it must be remembered, but undue influence, that is charged and necessary to be proven to overthrow this transaction, and such influence as is the result of sympathy and affection only is not undue influence condemned by the law."

And in the case of Stroup v. Austin, 180 Ala. 240, 60 So. 879, 880, it is said: "The influence which suffices for the avoidance of a conveyance cannot proceed alone from sympathy or affection for the grantee, but is such as dominates the grantor's will and coerces it to serve the will of another in the act of conveying."

 In cases like the one now under consideration, the courts cannot overlook or be forgetful of the fact that a person of sound mind may dispose of his property as he sees fit, and it is the solemn duty of the court to uphold a conveyance, where understandingly made, by persons of sound mind, although the grantee may be a relative, and the conveyance is wholly voluntary, in the absence of any evidence of undue influence in fact, or the presumption of such arising from the relation of the parties. For as said in Stroup v. Austin, supra: "Courts of equity will be astute to discover the signs of fraud, imposition, and unfair dealing, and eager to thwart their evil ends. But in doing so they must be extremely careful not to interfere with that right of free disposal which inheres in the ownership of property, and not to defeat the uncoerced wishes of its owner." Robinson v. Griffin, 173 Ala. 372, 56 So. 124.

We have carefully scrutinized the evidence in this case, and we find nothing in it that would justify us in holding that the conveyance executed by J. M. Abrams to his brother M. M. Abrams was procured by undue influence, or that it was the result of any influence exerted by the former over the latter. We would not be justified, therefore, in holding the deed void. The judge of the lower court so held, and we are in full accord with his conclusions.

Having reached the conclusion that the conveyances to Guy W. Abrams and wife and to M. M. Abrams are valid, the complainant, being without interest in the lands, was not entitled to any decree of partition. This being true, the court properly dismissed the bill.

 The jurisdiction of the court was invoked in this cause for the purpose of canceling the two deeds, and for partition, and, the complainant showing no right to such relief, the bill would not be retained for the purpose of settling mere incidental matters of dispute between the parties, which are of purely legal cognizance. Therefore the error of the court in sustaining the demurrer to paragraph 10 of the bill involved no injury to the complainant, and this cause will not be reversed therefor. Wood et al. v. Estes, 224 Ala. 140, 139 So. 331.

It follows, therefore, that the decree of the circuit court dismissing complainant's bill will be here affirmed.

Affirmed.

THOMAS, BROWN, and FOSTER, JJ., concur.